1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| CRAIG MATTHEW BEINGESSER, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 15-1385 JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

18
**I.    SUMMARY**

19
        On July 10, 2015, Craig Matthew Beingesser ("plaintiff") filed a Complaint

20
seeking review of the Commissioner of Social Security's denial of plaintiff's

21
application for benefits.  The parties have consented to proceed before the

22
undersigned United States Magistrate Judge.

23
        This matter is before the Court on the parties' cross motions for summary

24
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

25
Court has taken both motions under submission without oral argument.  See Fed.

26
R. Civ. P. 78; L.R. 7-15; July 14, 2015 Case Management Order ¶ 5.

27
///

28
///

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6        On July 17, 2012, plaintiff filed an application for Disability Insurance

7    Benefits alleging disability on October 26, 2010, due to chronic lower back pain,

8    sleep apnea, depression, spondylolisthesis, arthritis, and inability to walk for more

9    than five minutes.  (Administrative Record ("AR") 10, 107, 132).  The ALJ

10   examined the medical record and heard testimony from plaintiff (who was

11   represented by counsel) and a vocational expert on January 6, 2014.  (AR 21-44).

12       On April 2, 2014, the ALJ determined that plaintiff was not disabled

13   through the date of the decision.  (AR 10-16).  Specifically, the ALJ found:

14   (1) plaintiff suffered from the following severe impairments:  disorder of the spine

15   with radiculopathy, spondylolisthesis, degenerative disc disease of the lumbar

16   spine, and obesity (AR 12); (2) plaintiff's impairments, considered singly or in

17   combination, did not meet or medically equal a listed impairment (AR 13);

18   (3) plaintiff retained the residual functional capacity to perform light work

19   (20 C.F.R. § 404.1567(b)) with additional limitations[1] (AR 14); (4) plaintiff could

20   not perform any past relevant work (AR 16); (5) there are jobs that exist in

21

22   _____

23   [1]The ALJ determined that plaintiff:  (i) could lift and/or carry 20 pounds occasionally and
     10 pounds frequently; (ii) could stand and walk for 4 hours of an 8-hour workday, with no
24   prolonged walking greater than 30 minutes at a time with the use of a cane; (iii) could sit for 6
     hours of an 8-hour workday with the ability to stand and stretch, which is not to exceed 10% of
25   the day; (iv) could do occasional pushing and pulling with the lower extremities within the
     weight limits noted above; (v) could climb stairs, but not ladders, ropes or scaffolds; (vi) should
26   not perform hazardous work such as operating fast or dangerous machinery, work at unprotected
     heights, or driving commercial vehicles; and (vii) would be limited to unskilled, simple repetitive
27   tasks due to pain, side effects of pain medications, and symptoms from secondary depression
     related to pain.  (AR 14).
28

1 significant numbers in the national economy that plaintiff could perform,
2 specifically production assembler, electronics worker, and bench assembler (AR
3 16-17); and (6) plaintiff's allegations regarding the intensity, persistence, and
4 limiting effects of subjective symptoms were not entirely credible (AR 15).

5      The Appeals Council denied plaintiff's application for review.  (AR 1).

6 **III.   APPLICABLE LEGAL STANDARDS**

7     **A.   Sequential Evaluation Process**

8      To qualify for disability benefits, a claimant must show that the claimant is
9 unable "to engage in any substantial gainful activity by reason of any medically
10 determinable physical or mental impairment which can be expected to result in
11 death or which has lasted or can be expected to last for a continuous period of not
12 less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
13 (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
14 impairment must render the claimant incapable of performing the work the
15 claimant previously performed and incapable of performing any other substantial
16 gainful employment that exists in the national economy.  Tackett v. Apfel, 180
17 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18      In assessing whether a claimant is disabled, an ALJ is required to use the
19 following five-step sequential evaluation process:

20     (1)   Is the claimant presently engaged in substantial gainful activity?  If
21         so, the claimant is not disabled.  If not, proceed to step two.

22     (2)   Is the claimant's alleged impairment sufficiently severe to limit
23         the claimant's ability to work?  If not, the claimant is not
24         disabled.  If so, proceed to step three.

25     (3)   Does the claimant's impairment, or combination of
26         impairments, meet or equal an impairment listed in 20 C.F.R.
27         Part 404, Subpart P, Appendix 1?  If so, the claimant is
28         disabled.  If not, proceed to step four.

1       (4)     Does the claimant possess the residual functional capacity to

2             perform claimant's past relevant work?  If so, the claimant is

3             not disabled.  If not, proceed to step five.

4       (5)     Does the claimant's residual functional capacity, when

5             considered with the claimant's age, education, and work

6             experience, allow the claimant to adjust to other work that

7             exists in significant numbers in the national economy?  If so,

8             the claimant is not disabled.  If not, the claimant is disabled.

9 Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

10 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

11       The claimant has the burden of proof at steps one through four, and the

12 Commissioner has the burden of proof at step five.  See Bustamante v. Massanari,

13 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also

14 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial

15 burden of proving disability).

16    **B.**    **Standard of Review**

17       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

18 benefits only if it is not supported by substantial evidence or if it is based on legal

19 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

20 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

21 (9th Cir. 1995)).  Federal courts may review only the reasoning in the

22 administrative decision itself, and may affirm a denial of benefits only for those

23 reasons upon which the ALJ actually relied.  Garrison v. Colvin, 759 F.3d 995,

24 1010 (9th Cir. 2014) (citation omitted); see also Molina, 674 F.3d at 1121 (citing

25 Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196

26 (1947)) ("[courts] may not uphold an agency's decision on a ground not actually

27 relied on by the agency").

28 ///

1    Substantial evidence is "such relevant evidence as a reasonable mind might
2    accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389,
3    401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but
4    less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan,
5    911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence
6    supports a finding, a court must "'consider the record as a whole, weighing both
7    evidence that supports and evidence that detracts from the [Commissioner's]
8    conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)
9    (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  A denial of benefits
10   must be upheld if the evidence could reasonably support either affirming or
11   reversing the ALJ's decision.  Robbins, 466 F.3d at 882 (a court may not
12   substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see
13   also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more
14   than one rational interpretation, we must uphold the ALJ's findings if they are
15   supported by inferences reasonably drawn from the record.") (citation omitted).

16   Even when an ALJ's decision contains error, it must still be affirmed if the
17   error was harmless.  Treichler v. Commissioner of Social Security Administration,
18   775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was
19   inconsequential to the ultimate nondisability determination; or (2) the ALJ's path
20   may reasonably be discerned, even if the ALJ explains the ALJ's decision with
21   less than ideal clarity.  Id. (citation, quotation marks, and internal quotations
22   marks omitted).

23   A reviewing court may not make independent findings based on the
24   evidence before the ALJ to conclude that the ALJ's error was harmless.
25   Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted);
26   see also Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (district court may
27   not use harmless error analysis to affirm decision on ground not invoked by ALJ)
28   (citation omitted).  Where a reviewing court cannot confidently conclude that an

5

1  error was harmless, a remand for additional investigation or explanation is

2  generally appropriate.  See Marsh, 792 F.3d at 1173 (remanding for additional

3  explanation where ALJ ignored treating doctor's opinion and court not could not

4  confidently conclude ALJ's error was harmless); Treichler, 775 F.3d at 1099-1102

5  (where agency errs in reaching decision to deny benefits and error is not harmless,

6  remand for additional investigation or explanation ordinarily appropriate).

7  **IV.   DISCUSSION**

8        Plaintiff contends that a reversal or remand is warranted, in part, because the

9  ALJ failed properly to consider the medical evidence.  (Plaintiff's Motion at 2-3,

10  9-10).  The Court agrees.  Since the Court cannot find the ALJ's error harmless, a

11  limited remand is warranted.

12        **A.    Pertinent Law**

13        In Social Security cases, the weight given to medical opinions depends on

14  the type of medical source who provided them, namely "treating physicians,"

15  "examining physicians," and "nonexamining physicians" (including "State agency

16  medical or psychological consultant[s]").  20 C.F.R. §§ 404.1527(c)(1)-(2) & (e),

17  404.1502, 404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks

18  omitted).  A treating physician's opinion is generally given the most weight, and

19  may be "controlling" if it is "well-supported by medically acceptable clinical and

20  laboratory diagnostic techniques and is not inconsistent with the other substantial

21  evidence in [the claimant's] case record[.]"  20 C.F.R. § 404.1527(c)(2); Orn v.

22  Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted).

23  In turn, an examining, but non-treating physician's opinion is entitled to less

24  weight than a treating physician's, but more weight than a nonexamining

25  physician's opinion.  Garrison, 759 F.3d at 1012 (citation omitted).

26  ///

27  ///

28  ///

6

1    An ALJ is required to evaluate "every medical opinion"[2] in a claimant's

2    case record.  20 C.F.R. § 404.1527(b), (c).  While not bound by statements about a

3    claimant's condition provided by nonexamining physicians, ALJs must consider

4    such findings as "opinion evidence," and determine the weight to be given such

5    opinions using essentially the same factors for weighing opinion evidence

6    generally,[3] including "supportability of the opinion in the evidence," "the

7    consistency of the opinion with the record as a whole," "any explanation for the

8    opinion provided by the [nonexamining physician]," as well as "all other factors

9    that could have a bearing on the weight to which an opinion is entitled, [such as]

10   any specialization of the [nonexamining physician]."  20 C.F.R. § 404.1527(b),

11   (c).  Since nonexamining physicians, by definition, have no examining or treating

12   relationship with a claimant, the weight given to their opinions will primarily

13   depend on the degree to which the opinions provided are supported by evidence in

14   the case record and the extent to which the physicians explains their opinions.

15   20 C.F.R. § 404.1527(c)(2)(ii)(3); see also Social Security Ruling ("SSR") 96-6P

16

17

18   [2]"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s),

19   including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

20

21   [3]Unless a treating physician's opinion has been given "controlling" weight under social security regulations, an ALJ must consider multiple factors when deciding the amount of weight

22   to give/afford any medical opinion, including (i) "[l]ength of the treatment relationship and the frequency of examination"; (ii) "[n]ature and extent of the treatment relationship";

23   (iii) "supportability" (i.e., the amount of "relevant evidence" the medical source presents, and the quality/extent of the "explanation a source provides for an opinion") ("The better an explanation

24   a source provides for an opinion, the more weight we will give that opinion.");

25   (iv) "[c]onsistency . . . with the record as a whole"; (v) "[s]pecialization (i.e., "[whether an] opinion [provided by] a specialist about medical issues related to his or her area of specialty");

26   and (vi) "[o]ther factors . . . which tend to support or contradict the opinion" (i.e., the extent to

27   which a physician "is familiar with the other information in [a claimant's] case record," or the physician understands Social Security "disability programs and their evidentiary requirements").

28   20 C.F.R. § 404.1527(c)(2)-(6).

7

("The regulations provide progressively more rigorous tests for weighing opinions
as the ties between the source of the opinion and the individual become weaker.").

An ALJ "must explain in the decision the weight given to [nonexamining]
opinions" in the same manner as "opinions from treating [and] nontreating
sources. . . ." 20 C.F.R. § 404.1527(e)(2)(ii); 20 C.F.R. § 416.927(e)(2)(ii); SSR
96-6p ("Administrative law judges and the Appeals Council are not bound by
findings made by State agency or other program physicians and psychologists, but
they may not ignore these opinions and must explain the weight given to the
opinions in their decisions."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir.
2008) ("An ALJ is required to consider as opinion evidence the findings of state
agency medical consultants; the ALJ is also required to explain in his decision the
weight given to such opinions."); see generally 42 U.S.C.A. § 405(b)(1) ("ALJ's
unfavorable decision must, among other things, "set[] forth a discussion of the
evidence" and state "the reason or reasons upon which it is based").

**B.    Analysis**

First, the ALJ's decision does not accurately summarize the medical record
as a whole. For example, in assessing plaintiff's physical residual functional
capacity the ALJ indicated that she was relying on "the opinions of the State
agency medical consultants on initial review and on reconsideration[,]" reasoning
that "[t]he opinions of all of these physicians are generally consistent in that they
all assess the [plaintiff] is able to perform a range of work at the medium
exertional level." (AR 15). Nonetheless, the decision provides no citation to any
of the medical consultants upon which the ALJ purportedly relied, and the record
appears to contain only one opinion from a State agency medical consultant which
addresses plaintiff's functional limitations at all.[4] (AR 16, 48, 50-51 [October 4,

---

[4]A Social Security Administration Disability Determination and Transmittal form lists the
name of a different physician (*i.e.*, Dr. P. Ombres) who apparently was involved in plaintiff's

(continued...)

1    2012, medical findings and physical residual functional capacity assessment from

2    Dr. D. Haaland on initial level of review]).  In addition, the ALJ describes the

3    findings of a June 2012 MRI of plaintiff's spine ("2012 MRI") as follows:

4           A MRI of the thoracic and lumbar spine revealed grade I

5           spondylolisthesis with the disc protrusion and with lateral recess

6           stenosis.  There was also a disc herniation on the right at L1-2  but

7           with no significant central stenosis and mild right sided lateral recess

8           narrowing.  There was a small disc protrusion at T12-L1 with no

9           significant central canal narrowing.

10   (AR 15) (citing Exhibit 2F at 22 [AR 288]).  The foregoing, however, does not

11   accurately reflect the content or tone of the findings in the full 2012 MRI.  The

12   ALJ essentially relied on a progress note which itself appears to have summarized

13   only a small portion of the findings from the 2012 MRI report, addressed only

14   those MRI findings which support non-disability, and disregarded several much

15   more severe findings from the 2012 MRI.  (Compare AR 15, 288 [ALJ and

16   progress note partial summary of 2012 MRI findings] with AR 203 [full report

17   from 2012 MRI (with comparison to plaintiff's 2007 MRI findings) noting

18   findings of, among other things, "[s]evere dessication of disk material," "severe

19   spinal canal stenosis," "[l]eft neural foramina [] severely narrowed" in L4-5, and

20   "significant worsening of the appearance of the LS-spine").

21          The ALJ's incorrect characterization of the medical evidence calls into

22   question the validity of both the ALJ's evaluation of the medical evidence and the

23   ALJ's decision as a whole.  See, e.g., Regennitter v. Commissioner of Social

24   Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific

25   finding" that consists of an "inaccurate characterization of the evidence" cannot

26

27          ―――――――――――――

28          [4](...continued)
     case at the reconsideration level, but the record otherwise does not contain any opinions from
     such physician about plaintiff's impairments and/or limitations.  (AR 55).

                                          9

1   support ALJ's decision); <u>Lesko v. Shalala</u>, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5,

2   1995) ("inaccurate characterizations of the Plaintiff's medical record" found to

3   constitute reversible error); <u>see generally</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456

4   (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record which

5   support non-disability) (citations omitted); <u>Reddick v. Chater</u>, 157 F.3d 715, 722-

6   23 (9th Cir. 1998) (error for ALJ to paraphrase medical evidence in manner that is

7   "not entirely accurate regarding the content or tone of the record").

8        Second, substantial evidence does not support the ALJ's residual functional

9   capacity assessment for plaintiff.  The ALJ "gave significant weight, but not full

10  weight, to the opinions of the State agency medical consultants . . . [who found

11  plaintiff] able to perform a range of work at the medium exertional level."  (AR

12  15).  The ALJ further noted that "no single assessment has been completely

13  adopted as the residual functional capacity determined herein."  (AR 15).

14  Nonetheless, without explanation, the ALJ failed to identify with any particularity

15  which of the "specific restrictions" from any State agency medical consultant the

16  ALJ adopted and/or rejected.  <u>See, e.g.</u>, <u>Garrison</u>, 759 F.3d at 1012-13 ("[A]n ALJ

17  errs when he rejects a medical opinion or assigns it little weight while doing

18  nothing  more than ignoring it, asserting without explanation that another medical

19  opinion is more persuasive, or criticizing it with boilerplate language that fails to

20  offer a substantive basis for his conclusion."); <u>see also</u> <u>Vincent v. Heckler</u>, 739

21  F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide explanation when rejecting

22  "significant probative evidence") (citation omitted).  Moreover, the only state

23  agency physician in the record who provided specific findings regarding plaintiff's

24  functional abilities (<i>i.e.</i>, Dr. Haaland) appears to have relied solely on the findings

25  from a 2007 MRI of plaintiff's lumbar spine, and did not address what impact the

26  more severe impairments found during the 2012 MRI might have on plaintiff's

27  functional abilities.  (<u>Compare</u> AR 48 [Dr. Haaland noting "clinical findings on

28  imaging" of "minimal antero-listhesis of L4 upon L5] <u>with</u> AR 200 [2007 MRI

10

1    finding of "mild anterolisthesis" at L4-5]).  Even so, the ALJ did not reject, or

2    include in plaintiff's residual functional capacity assessment multiple postural

3    limitations identified by Dr. Haaland (*i.e.*, limitations to frequent stooping,

4    kneeling, crouching, crawling, and climbing of ramps and stairs).  (Compare AR

5    14 with AR 51).

6           Third, since the record does not appear to contain any medical opinion

7    which addresses plaintiff's impairments and related functional limitations based

8    on the complete case record, it appears that the ALJ ultimately based her decision

9    solely on her own lay interpretation of the medical records as a whole and

10   plaintiff's subjective complaints.  (See AR 14-15).  As a lay person, however, "an

11   ALJ is 'simply not qualified to interpret raw medical data in functional terms.'"

12   Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting Nguyen

13   v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam), and citing Day v.

14   Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)); see also Manso-Pizarro v.

15   Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996) ("With a

16   few exceptions . . . an ALJ, as a layperson, is not qualified to interpret raw data in

17   a medical record.").  Consequently, the Court cannot conclude that substantial

18   evidence supports the ALJ's residual functional capacity assessment.  See, e.g.,

19   Penny, 2 F.3d at 958 ("Without a personal medical evaluation it is almost

20   impossible to assess the residual functional capacity of any individual."); Tagger

21   v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or

22   finding must be supported by medical evidence, particularly the opinion of a

23   treating or an examining physician.") (citations and internal quotation marks

24   omitted); see also Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006)

25   ("[ALJ] must not succumb to the temptation to play doctor and make . . .

26   independent medical findings.") (citations and quotation marks omitted); Gonzalez

27   Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir.

28   ///

1  1987) (ALJ may not "substitute his own layman's opinion for the findings and
2  opinion of a physician") (citation omitted).

3        Finally, the Court cannot conclude that the ALJ's errors were harmless.  The
4  ALJ did not explain any reasons for including or excluding specific restrictions in
5  her residual functional capacity assessment for plaintiff, but instead simply
6  asserted that she had "adopted those specific restrictions on a function by function
7  basis that [were] best supported by the objective evidence as a whole. . . ."  (AR
8  15).  Consequently, the Court is unable to conduct a meaningful review of the
9  ALJ's assessment of plaintiff's residual functional capacity, and thus cannot
10 conclude that the ALJ's errors were harmless.  Cf., e.g., Treichler, 775 F.3d at
11 1103 ("Although the ALJ's analysis need not be extensive, the ALJ must provide
12 some reasoning in order for us to meaningfully determine whether the ALJ's
13 conclusions were supported by substantial evidence.") (citation omitted).

14       Accordingly, a remand is required to permit the ALJ to further develop
15 and/or evaluate the record medical evidence and reassess plaintiff's residual
16 functional capacity.

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1

## V.    CONCLUSION[5]

2

For the foregoing reasons, the decision of the Commissioner of Social

3

Security is reversed in part, and this matter is remanded for further administrative

4

action consistent with this Opinion.[6]

5

LET JUDGMENT BE ENTERED ACCORDINGLY.

6

DATED:   June 30, 2016

7

_____

/s/

8

Honorable Jacqueline Chooljian

UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

_____

23

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's

decision, except insofar as to determine that a reversal and remand for immediate payment of

24

benefits would not be appropriate.

25

[6]When a court reverses an administrative determination, "the proper course, except in rare

26

circumstances, is to remand to the agency for additional investigation or explanation."

Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and

27

quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy

defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and

28

internal quotation marks omitted).

13